**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLORADO**

Civil Action No. 1:20-cv-00054

DENVER HEALTH AND HOSPITAL AUTHORITY,

Plaintiff,

v.

ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Services; and
THE CENTERS FOR MEDICARE AND MEDICAID SERVICES,

Defendants.

**COMPLAINT**

Plaintiff Denver Health and Hospital Authority ("Denver Health") hereby avers as follows:

**JURISDICTION AND VENUE**

1. Denver Health is a Colorado entity that operates hospital-based Federally Qualified Health Centers ("FQHCs"), and brings this action to compel Defendants Alex M. Azar II, Secretary of the United States Department of Health and Human Services, and the Centers for Medicare and Medicaid Services ("CMS") (together, "Defendants") to comply with the mandatory provisions of the Administrative Procedure Act ("APA") as codified at 5 U.S.C. § 701, *et seq.*, and with federal Medicaid law pursuant to 28 U.S.C. § 1361. This court has jurisdiction over Denver Health's claims for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 65.

2. Venue lies in this judicial district because Denver Health's principle place of

business and its hospital are located and reside within this judicial district and the consequences of Defendants' unauthorized and arbitrary activities are occurring within this judicial district.

## THE PARTIES

3. Plaintiff Denver Health and Hospital Authority is an integrated public health care system organized as a Colorado public hospital authority. Denver Health operates a duly licensed acute care hospital, the Denver Health Medical Center ("DHMC"), which is located in Denver, Colorado, and which provides hospital outpatient services through a number of FQHCs that it operates under its hospital license. The FQHCs have provided outpatient hospital services continuously to Medicaid patients and to other low-income patients at all times relevant herein.

4. Defendant CMS is part of the United States Department of Health and Human Services and is the federal agency responsible for administering the Medicaid Program.

5. Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services, and has ultimate responsibility for overseeing Medicaid Program implementation.

## DENVER HEALTH'S STANDING AND RIGHT TO SEEK ENFORCEMENT OF THE LAW

6. Denver Health, suing on behalf of itself and on behalf of Medicaid beneficiaries, as parties seeking to compel Secretary Azar to comply with his public duties, has a right and an enforceable interest to maintain this action to require Secretary Azar to comply with his obligations under the law and to discharge his duties in a manner that is not arbitrary and capricious.

## FEDERAL MEDICAID LAW

7. Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, the statute

establishing the Medicaid program, authorizes federal financial support to states for medical assistance to qualifying low-income persons. The Medicaid program is jointly financed by the federal and state governments, and administered by the states. The states, in accordance with federal law, decide eligible beneficiary groups, types and ranges of services, payment levels for services, and administrative and operative procedures. Payment for services is made directly by states to the individuals or entities that furnish the services. (*See* 42 C.F.R. § 430.0.)

8. In order to receive matching Federal Financial Participation ("FFP"), states must agree to comply with the applicable federal Medicaid law and regulations. (*See* 42 U.S.C. § 1396, *et seq.*) Defendant CMS administers the Medicaid Program and determines the amount of FFP a state is entitled to receive.

9. The State of Colorado has elected to participate in the Medicaid program. (*See* Colo. Rev. Stat. § 25.5-4-101, *et seq.*; 10 Colo. Code Regs. § 2505-10, *et seq.*, 10 Colo. Code Regs. § 2505-3, *et seq.*) The Medicaid Program covers a broad array of outpatient services provided by hospitals under their state-issued hospital licenses.

10. Federal Medicaid law requires states to provide Medicaid Disproportionate Share Hospital ("DSH") payments for hospital services that take into consideration the atypical situation of hospitals that provide a significant portion of their services to Medicaid and other low-income patients with special needs. (*See* 42 U.S.C. §§ 1396a(a)(13)(A)(iv), 1396r-4 (the "DSH Statute").) Congress enacted the DSH Statute to ensure the financial stability of hospitals whose patient populations are "disproportionately composed of individuals who are either provided medical assistance under the State plan, or who have no source of third-party payment for such services." (OBRA 1981, Energy & Commerce Comm., Report of the Committee on the Budget, H.R. Rep.

No. 158, Vol. II, 97th Cong., 1st Sess., pp. 295-296.) These hospitals receive supplemental payments, commonly referred to as DSH payments.

11. Thus, DSH is a special reimbursement program which is aimed at making up the shortfall for eligible safety-net hospitals when care is provided to a patient who has little or no ability to pay or who is a Medicaid beneficiary. DSH payments help such safety-net hospitals cover the otherwise uncompensated costs of caring for Medicaid patients and the uninsured.

12. Under the Medicaid program, eligible hospitals, including those hospitals operated by Denver Health, receive federal DSH funding claimed by the state. The amount of federal funding for DSH payments that the state can claim for a specific hospital is limited by the difference between the costs that the eligible hospital incurs in providing hospital services to Medicaid beneficiaries and uninsured individuals, and the Medicaid and uninsured patient payments received by the eligible hospital for the services. (*See* 42 U.S.C. § 1396r-4(g)(1)(A).) This cap is commonly referred to as the "DSH Limit.

13. In Colorado, the Medicaid Program (including the DSH Program) is administered by the Colorado Department of Health Care Policy and Financing ("CDHCPF").

14. The DSH Limit is calculated using data contained in cost reports filed by eligible hospitals. These cost reports include data elements reflecting DSH-eligible costs and offsetting payments.

15. The hospital operated by Denver Health provides significant amounts of Medicaid and uncompensated care, and has qualified for DSH Payments at all times relevant to this lawsuit.

16. In order to facilitate the provision of primary care services to underserved populations, Congress enacted legislation that guarantees Medicaid coverage and payment for

services offered by clinics that qualify as FQHCs. (*See* 42 U.S.C. §§ 1396d(a)(2)(C), 1396a(bb) (the "FQHC Statute").) The Medicaid program requires states to pay FQHCs under either a per-visit Prospective Payment System Rate ("PPS Rate") or an alternative payment methodology that results in payment at least equal to what would be paid under the PPS Rate. (*See* 42 U.S.C. § 1396(bb).) PPS Rates under the Medicaid Act must be established to cover 100% of the FQHC's reasonable costs of providing services to Medicaid patients. (*See* 42 U.S.C. § 1396(bb)(4).[1]) These Medicaid payment provisions encourage the creation of FQHCs by ensuring that they recover the reasonable costs incurred in providing Medicaid services.

17. The services provided by FQHCs are services that Colorado hospitals are allowed to perform in their outpatient departments under their respective hospital licenses. Colorado hospitals are allowed to have their outpatient clinics designated as FQHCs and to operate the clinics as part of their outpatient departments.

18. Denver Health's hospital operates hospital-based FQHCs. Because the FQHCs are operated under the hospital's license, all of the services offered by these FQHCs could have been offered by the hospital's outpatient department if the hospitals had chosen not to operate FQHCs.

19. Denver Health has always accounted for the costs of operating its FQHCs as hospital outpatient department costs in its general ledger and financial statements. However, without any statutory or regulatory basis, CDHCPF has required Denver Health to exclude the FQHCs' costs and income from the costs reports that it submits to Colorado's fiscal intermediary

---

[1] In 1992, when states were first required to provide Medicaid coverage for services furnished by FQHCs, Medicaid reimbursement was required to be at 100 percent of reasonable costs.

for calculating the amount of DSH payments that it is entitled to. The exclusion of the FQHC costs will result in Denver Health receiving substantially less DSH payments than it is entitled to.

20. Denver Health learned that the reason why Colorado will not allow it to include the costs of FQHC provided services is that CMS has informed Colorado that it is not allowed to include such costs under federal law.

21. CMS has previously publicly taken the position that the costs incurred by hospital-based clinics can be included in calculating the DSH Limit if the clinic is operating under the hospital's license (and not under a separate clinic license). For example, in a July 30, 1999, letter Donna E. Shalala, the then-Secretary of Health and Human Services stated: "Where a state has chosen to license these clinics as hospital outpatient departments, and they are certified as part of the hospital, the state would be able to include the uncompensated care costs related to RHC[2]-provided hospital outpatient services in the calculation of a hospital's DSH payment limit. However, if the state has decided that its hospital-based RHCs are to be separately licensed, then the clinics' costs cannot be included in DSH calculations."[3] Since Colorado law allows hospitals to operate FQHCs under their hospital licenses, FQHC costs are includable in calculating the DSH Limit under the standard set forth by Secretary Shalala. In fact, Colorado's CMS approved State Medicaid Plan expressly recognizes the existence of hospital-based FQHCs such as the ones

---

[2] RHC refers to Rural Health Clinic, a designation similar to FQHCs. RHCs are treated similarly to FQHCs with the main difference being that RHCs are located in rural areas and FQHCs are often located in urban areas.

[3] Subsequently CMS attempted to preclude Louisiana from including hospital-based FQHC costs in its DSH Limit calculation. The Fifth Circuit Court of Appeal overturned this attempt. (*See Louisiana Dept. of Health and Hospitals v. Centers for Medicare and Medicaid Services*, 346 F.3d 571 (5th Cir. 2003).)

operated by DHMC. *See,* Colorado State Plan at Attachment 4.19-B, page I-A.

22. On November 7, 2008, CMS published a final rule that, if implemented, would arguably have prevented states from including hospital-based FQHC costs in the calculation of the DSH Limit. (*See* 73 Fed. Reg. at 66187, *et seq.*) The rule was extremely controversial and Congress passed a statute prohibiting CMS from implementing the rule prior to June 30, 2009. (*See* American Recovery and Reinvestment Act of 2009 § 5003(c) (Pub. L. 111-5).) On June 30, 2009, CMS rescinded the rule. (74 Fed. Reg. 31183, *et seq.*)

23. In rescinding the 2008 rule, CMS acknowledged the objections to the 2008 rule that it would prohibit hospitals from including clinic costs in the DSH Limit calculation. (74 Fed. Reg. at 31187.) Specifically, RHCs had argued that this would increase Medicaid costs because clinics would be closed and the patients would need to be treated in hospital emergency rooms at a higher cost (since clinics generally are more cost-effective than hospital emergency rooms). (*Id.*) CMS stated that the rescission of the rule should alleviate these fears: "This final rule should eliminate the concerns expressed by the clinics and other providers by reinstating the regulatory definition of 'outpatient hospital services' at § 440.20 that existed before the final rule became effective." (*Id.*)

24. Inexplicably, CMS has reversed position and has informed various states, including California and Colorado, that they cannot include hospital-based FQHC costs in the calculation of the DSH Limit ("CMS's New Rule"). In so doing, CMS implicitly acknowledged that it had not cited or promulgated any rule or regulation implementing this prohibition. CMS simply pretended that hospital-based FQHC costs had always been excluded from the calculation of DSH Limits. Denver Health is informed and believes and on that ground alleges that Colorado's refusal to allow

the inclusion of the costs incurred by hospital-based FQHCs resulted from CMS's New Rule.

25. CMS's New Rule is arbitrary and capricious and contrary to law. CMS's New Rule is contradictory to the DSH Statute because the DSH Statute requires the inclusion of all Medicaid and uninsured costs of providing hospital services to go into the calculation of the DSH Limit – and CMS has no basis for excluding costs incurred by hospitals for outpatient services provided by FQHCs. All of the hospital outpatient services provided by the hospital-based FQHCs could have been provided without obtaining FQHC designation and the uncompensated cost of providing the services would have been included in the DSH Limit calculation. Excluding these costs for hospitals that chose to obtain FQHC designations for their outpatient hospital clinics penalizes the hospitals for those efforts by depriving them of DSH funds that they need if they are to continue to provide large amounts of services to the poor. CMS's New Rule violates the DSH statute because it deprives safety-net hospitals of DSH funds to which they are entitled. CMS's New Rule is also inconsistent with and circumvents Congressional intent with respect to the FQHC statute because it penalizes hospitals for obtaining FQHC designation for outpatient clinics, and evades Medicaid's obligation to pay its fair share.

26. On or about October 12, 2016, certain California hospitals that operated FQHCs filed a lawsuit in the United States District Court for the Northern District of California, (*Alameda Health System et. al. v. Centers for Medicare & Medicaid Services*, Case No. 16-cv-05903-PJH ), against CMS seeking a Court order invalidating CMS's New Rule.

27. On or about December 18, 2017, the federal district court granted the hospitals' Motion for Summary Judgment, holding: "'Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid.' *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d

1392, 1405 (9th Cir. 1995). Accordingly, because CMS failed to engage in notice-and-comment rulemaking, the challenged provision must be set aside." (*Alameda Health System et. al. v. Centers. For Medicare & Medicaid Services*, 287 F.Supp.3d 896, 919 (N.D.Cal. 2017) (the "*Alameda* Decision").)

28. On or about January 16, 2018, the United States District Court for the Northern District of California entered a judgment holding in pertinent part: "The court declares that CMS's Policy is a legislative rule that was not promulgated in accordance with the requirements of notice-and-comment rulemaking; [] In accordance with 5 U.S.C. § 706(2)(D), the court therefore declares CMS's Policy as applied in California to be unlawful and orders that it be set aside in California." CMS filed a timely appeal of the judgment, but moved to dismiss its appeal. Pursuant to CMS's unopposed motion, CMS's appeal was dismissed on or about July 18, 2018.

29. Denver Health informed CDHCPF of the *Alameda* Decision and asked that the DHMC operated FQHCs be included in its DSH calculation. CDHCPF refused, stating in relevant part that "[u]ntil CMS provides different direction, the Department will continue to exclude FQHC costs from the hospital-specific DSH limit calculation. The Department is bound to follow CMS guidance absent a court order . . . ." The exclusion of the costs of hospital-based FQHCs will have a material adverse impact on the DSH payments that Denver Health's hospitals will receive, costing it millions of dollars per year.

**RIGHT TO INJUNCTIVE AND DECLARATORY RELIEF**

30. CDHCPF, through its fiscal intermediary, is currently in the process of auditing hospital cost reports and calculating the DSH Limit. If this Court does not grant expedited relief and preclude CMS from forcing CDHCPF to exclude hospital-based FQHC costs from the

calculation of the DSH Limit, those calculations will be completed and payments will be made based on data that excludes the FQHC costs.

31. Furthermore, there are other Medicaid and state-only payment programs that use DSH payments as a factor in determining the amount of additional funding that safety-net hospitals are entitled to receive. Since the funding under these other programs is determined in part by DSH payments, it would be extremely complicated and difficult to unwind the effect of CMS's New Rule if the payments are made before the Court rules on the legality of CMS's New Rule. Furthermore, safety-net hospitals across the State would be uncertain about the amount of DSH and other supplemental funding that they will ultimately be entitled to receive, and therefore could limit the availability of health care services for Medicaid patients and other low-income individuals.

32. Once CDHCPF's DSH calculations become final, it will be difficult or impossible to put the Denver Health in the position that it would have been in absent CMS's improper instruction that hospital-based FQHC costs cannot be included in the DSH Limit calculation. Furthermore, under the Eleventh Amendment to the United States Constitution, this Court will have no power to award monetary relief against the State of Colorado. For these reasons, Denver Health has no adequate remedy at law and will be irreparably harmed if CMS's action is not reversed. Denver Health is therefore entitled to expedited relief, including a preliminary injunction, precluding CMS from demanding that Colorado exclude hospital-based FQHC costs from the calculation of the DSH Limit.

33. Unless enjoined, Defendants will continue to engage in the unlawful acts and practices described above, which have already been held to be illegal in the *Alameda* Decision.

Denver Health has no adequate remedy at law, and is therefore entitled to injunctive relief.

34. An actual controversy has arisen and now exists between Denver Health, on the one hand, and Defendants, on the other, concerning their respective rights, duties, and obligations under federal law, despite the fact that the issue has already been resolved by a Untied States District Court in California, which decision should be *res judicata* in the present case and/or which should collaterally estop defendants from relitigating the issue. Accordingly, Denver Health is entitled to declaratory relief.

**FIRST CAUSE OF ACTION**

**(PROCEDURAL VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706)**

35. Denver Health hereby incorporates by reference the prior paragraphs of this Complaint, as though fully set forth herein.

36. The Administrative Procedure Act requires that agencies implementing Congressional statutes through an agency statement of general applicability and future effect designed to implement, interpret, or prescribe law or policy do so through a rulemaking. A rulemaking under the Administrative Procedure Act is the "agency process for formulating, amending, or repealing a rule," which must follow notice and comment procedures under the Administrative Procedure Act. (*See* 5 U.S.C. §§ 551, 553.)

37. Defendants were required to follow the rulemaking requirements of the Administrative Procedure Act in promulgating CMS's New Rule precluding states from including the costs of hospital-based FQHCs in calculating the DSH Limit. These requirements included promulgating a Notice of Proposed Rulemaking, published in the Federal Register, allowing a

period for public comment, responding to the public comment, and promulgating a final rule. CMS failed to comply with any of these rulemaking requirements. CMS's New Rule prohibiting states from including the costs incurred by hospital-based FQHCs in their DSH Limit calculations is therefore invalid.

38. Denver Health seeks both a declaratory judgment holding that CMS's New Rule is invalid, and a preliminary and permanent injunction precluding CMS from requiring states to exclude the costs of hospital-based FQHCs from their DSH Limit calculations. Denver Health also seek reasonable attorneys' fees and costs incurred in bringing this action.

**SECOND CAUSE OF ACTION**

**(SUBSTANTIVE VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706)**

39. Denver Health hereby incorporate by reference the prior paragraphs of this Complaint, as though fully set forth herein.

40. Under the federal Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the federal courts must overturn any agency action that is arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law.

41. Secretary Azar's decision to preclude states from including the costs of hospital-based FQHCs in their DSH Limit calculations should be overturned for at least the following reasons: (1) it is contrary to the express requirements of the DSH Statute, which is intended to allow states to include all costs incurred in providing hospital services in the DSH calculation; (2) it is inconsistent with and circumvents Congress' intent in enacting the FQHC statute (which was intended to encourage the establishment of FQHCs) because it discourages the establishment of

FQHCs by excluding the FQHC costs from the DSH calculations; (3) it is arbitrary and capricious, as well as an abuse of discretion, because the services at issue clearly fall within the statutory and regulatory definition of hospital services and would have been treated as such by Defendants had the hospitals not obtained designation of their respective clinics as FQHCs; and (4) it is contrary to the United States District Court's decision in *Alameda Health System et. al. v. Centers for Medicare & Medicaid Services*, 287 F.Supp.3d 896, 919 (N.D.Cal. 2017) . There is no basis for penalizing hospitals for obtaining FQHC status for outpatient clinics by excluding the clinics' costs from the DSH calculation.

42. Denver Health seeks a declaratory judgment holding that CMS's New Rule is invalid and a preliminary and permanent injunction precluding CMS from requiring states to exclude the costs of hospital-based FQHCs from their DSH Limit calculations. Denver Health also seek reasonable attorneys' fees and costs incurred in bringing this action.

**<u>THIRD CAUSE OF ACTION</u>**

**(DECLARATORY RELIEF)**

43. Denver Health hereby incorporate by reference the prior paragraphs of this Complaint, as though fully set forth herein.

44. An actual and justiciable controversy exists between Denver Health and Defendants regarding whether Colorado can be required to exclude the costs hospitals incur in providing hospital outpatient services in their hospital-based FQHCs.

45. No administrative appeal process or other administrative remedy is available to Denver Health to challenge CMS's action.

46. Accordingly, pursuant to 28 U.S.C. § 2201, Denver Health requests that this Court

declare that CMS's directive that Colorado cannot include the costs incurred by hospital-based FQHCs in the calculation of DSH Limits is invalid and contrary to law, and must therefore be withdrawn.

47. Denver Health also seek preliminary and permanent injunctions precluding CMS from requiring states to exclude the costs of hospital-based FQHCs from their DSH Limit calculations, as well as reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE,** Denver Health request the following relief against each and every Defendant as follows:

1. For an Order declaring that it was arbitrary, capricious, an abuse of discretion, and not in accordance with applicable law for CMS to preclude Colorado from including the costs incurred by hospital-based FQHCs from the DSH Limit calculation;

2. For preliminary and permanent injunctions precluding CMS from disallowing hospital-based FQHC costs from being used in the calculation of the DSH Limit;

3. That this Court retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and until there are reasonable assurances that Defendants will continue to comply in the future, absent continuing jurisdiction;

4. For the costs of suit, including reasonable attorneys' fees incurred by Denver Health, as permitted under 42 U.S.C. § 1988 or otherwise; and

5. Such other and further relief as the Court may find just and proper.

Dated: January 7, 2020

By: s/ Tami Smason

Tami Smason
Diane Ung
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone: 213.972.4500
FAX: 213.486.0065
E-mail: tsmason@foley.com
Diane.ung@foley.com

Coleman T. Lechner
Foley & Lardner LLP
600 17th St., Suite 2020S
Denver, CO 80202
Telephone: 720.437.2000
FAX: 720.437.2200
E-mail: clechner@foley.com

**Attorneys for Plaintiff Denver Health and Hospital Authority**
**777 Bannock St.**
**Denver, CO 80204**